UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA L. PHLIPPEAU,

                Plaintiff,                Civil Action No. 17-13385
                                                  Honorable Avern Cohn
                                                  Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 16]**

Plaintiff Pamela Phlippeau ("Phlippeau") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #15, 16), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Phlippeau is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #16**) be **DENIED**, Phlippeau's Motion for Summary Judgment (**Doc. #15**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II.   REPORT

### A.   Background

Phlippeau was 51 years old at the time of her alleged onset date of October 9, 2014, and at 5'2" tall weighed approximately 235 pounds during the relevant time period.  (Tr. 135, 139). She completed high school and earned an associate's degree.  (Tr. 34, 140).  She has some work experience as a teacher's assistant and selling jewelry, but she stopped working in 2013 because of her medical conditions.  (Tr. 140-41).  She now alleges disability primarily as a result of knee and back pain, depression and anxiety, and fibromyalgia.  (Tr. 35, 139).

After Phlippeau's application for SSI was denied at the initial level (Tr. 62-65), she timely requested an administrative hearing, which was held on May 17, 2016, before ALJ Martha Gasparovich (Tr. 30-44).  Phlippeau, who was represented by attorney Andrew Kata, testified at the hearing, as did vocational expert Erin O'Callaghan.  (*Id.*).  On July 14, 2016, the ALJ issued a written decision finding that Phlippeau is not disabled under the Act.  (Tr. 11-19). On August 21, 2017, the Appeals Council denied review.  (Tr. 1-5).  Phlippeau timely filed for judicial review of the final decision on October 17, 2017.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Phlippeau's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.   The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

2

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this sequential analysis, the ALJ found that Phlippeau is not disabled under the Act. At Step One, the ALJ found that Phlippeau has not engaged in substantial gainful activity since October 19, 2014 (the application date). (Tr. 13). At Step Two, the ALJ found that she has the severe impairments of bilateral knee osteoarthritis, status post left total knee replacement, obesity, and a torn medial meniscus in her right knee. (*Id.*). At Step Three, the ALJ found that

Phlippeau's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 15).

The ALJ then assessed Phlippeau's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: limited to standing/walking no more than 4 hours in an 8-hour day; sitting is unlimited, but she requires a sit/stand option at least every hour; can lift no more than 20 pounds occasionally and 10 pounds frequently; can only stoop/climb/balance occasionally; and can never squat, crouch, crawl, kneel, or climb ropes, scaffolds, or ladders. (*Id.*).

At Step Four, the ALJ found that Phlippeau has no past relevant work. (Tr. 18). At Step Five, the ALJ concluded, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Phlippeau is capable of performing the jobs of bench assembler (5,000 jobs in southeast Michigan) and inspector (8,000 jobs). (Tr. 19). As a result, the ALJ concluded that Phlippeau is not disabled under the Act. (*Id.*).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial

evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.   Analysis**

In her motion, Phlippeau argues that the ALJ violated the treating physician rule when she failed to provide good reasons for affording "little weight" to the opinions of her two treating physicians, Naila Ahmad, M.D. and Todd Frush, M.D. (Doc. #15 at 11-16).

The treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

5

record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see, e.g.*, *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)). Those reasons "must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. ("SSR") 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). For the reasons set forth below, the Court finds merit to Phlippeau's argument that the ALJ erred in evaluating the opinions of her treating physicians.

    *1.*  *Dr. Naila Ahmad*

Phlippeau first challenges the weight given to the February 25, 2015 opinion of her treating physician, Dr. Ahmad. (Doc. #15 at 12-14). On that date, Phlippeau complained of worsening knee pain and ongoing back pain. (Tr. 293). Dr. Ahmad opined that Phlippeau could occasionally lift/carry up to ten pounds, and could stand/walk less than two hours in an eight-

6

hour workday.  (*Id.*).

In her decision, the ALJ discounted Dr. Ahmad's opinion in part because it was "unclear if this assessment is based on objective medical findings or the claimant's subjective medical complaints." (Tr. 17).  But, a fair reading of the opinion reveals that it was issued in the context of a complete "Disability Exam," which involved a detailed physical examination and documented clinical findings.  Specifically, on examination, Dr. Ahmad found pain with range of motion testing in the back and both knees; limited range of motion in the back as to extension, flexion, and left and right rotation; and limited range of motion in both knees as to flexion, internal rotation, and external rotation.  (Tr. 294).  Palpation to both knees anteriorly caused crepitus in each, and muscle strength was only 3/5 in both quadriceps.  (*Id.*).  Thus, contrary to the ALJ's suggestion, it certainly appears that Dr. Ahmad's opinion is supported by and consistent with her own objective medical findings.[1]

The ALJ also discounted Dr. Ahmad's opinion because:

> … it is without support from the medical evidence of record, includ[ing] her treatment of the claimant.  The claimant has mild degenerative changes at the lumbar spine and stable gait and coordination and no radiation of back pain into her lower extremities.  Therefore, to limit her to less than 2 hours of standing or walking in an 8-hour workday and lifting/carrying no more than 10 pounds is unsupported.

---

[1] The Commissioner argues that the "ALJ's conclusion about the basis for Dr. Ahmad's opinion was reasonable based on the placement of the restrictions within the medical report.  The doctor set forth his opined limitations in the section of the medical report labeled 'SUBJECTIVE' – as opposed to his examinations findings that were under the heading 'OBJECTIVE' . . . As such, it was reasonable for the ALJ to conclude that Dr. Ahmad's opinion was not based on [his] objective findings, but rather, on [Phlippeau's] subjective reports."  (Doc. #16 at 7).  This argument, which literally places form over substance, is flawed.  First, the ALJ did not "conclude" that Dr. Ahmad's opinion "was not based on [his] objective findings."  Rather, the ALJ wrote that it was "unclear" whether Dr. Ahmad based his findings on Phlippeau's subjective reports or the objective evidence.  (Tr. 17).  Second, like the ALJ's reasoning, the Commissioner's argument ignores that Dr. Ahmad's objective findings, which were part and parcel of the Disability Exam, are consistent with Phlippeau's subjective reports.

(Tr. 17). There are significant problems with this portion of the ALJ's analysis as well. First, as Phlippeau points out, this analysis focuses primarily on objective findings with respect to her *back* (degenerative changes of the lumbar spine and no radiating back pain). It says little to nothing about her *knee* problems, which certainly appear to be her most serious impairments. As noted above, Dr. Ahmad found limited range of motion and crepitus on palpation of both knees during her physical examination. (Tr. 294). Similar findings are present throughout the record. (*E.g.,* Tr. 289 (decreased range of motion in the right knee with flexion and extension in November 2014), 291 (same in January 2015), 370 (pain in both knees with range of motion in May 2015), 373 (decreased range of motion in the right knee with flexion, extension, and internal rotation in August 2015), 376 (pain with range of motion in the right knee in October 2015)). Moreover, the record contains significant MRI evidence of ongoing problems in both knees, which appears to further support Dr. Ahmad's opinion. Specifically, a May 23, 2014 MRI of Phlippeau's left knee showed bone infarcts involving the distal femur and proximal tibia; a sprain of the medial collateral ligament; a tear of the posterior horn of the medial meniscus; and advanced tricompartmental degenerative changes. (Tr. 296-97). Likewise, a March 23, 2016 MRI of Phlippeau's right knee showed multiple serpiginous lesions involving the distal femur and proximal tibia, which were concerning for bony infarcts; a complex tear of the lateral meniscus; a suggestion of a tear of the posterior horn of the medial meniscus; tricompartment degenerative changes; and a small suprapatellar joint effusion with debris/synovitis. (Tr. 396-97). Not surprisingly, given these imaging and physical examination findings, which were largely consistent over a two-plus year period, Phlippeau underwent two total knee replacement surgeries – the left in August 2014 and the right in June 2016. (Tr. 24-25, 260). Given the existence of all of this medical evidence, the Court cannot find that substantial evidence supports

the ALJ's decision to discount Dr. Ahmad's opinion as "without support from the medical evidence of record[.]" (Tr. 17).[2]

### 2. *Dr. Todd Frush*

Phlippeau also argues that the ALJ erred in affording "little weight" to the opinion of her treating orthopedist, Todd Frush, M.D. (Doc. #15 at 14-16). On October 21, 2014, Dr. Frush completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (Tr. 315-20). In that assessment, Dr. Frush opined that Phlippeau could occasionally lift/carry up to 20 pounds, stand or walk for one hour each in an eight-hour day, and sit for two hours in an eight-hour day. (Tr. 315-16). Dr. Frush further opined that Phlippeau needed a cane to ambulate (which was medically necessary), and with the cane, could use her free hand to carry small objects. (Tr. 316). The doctor also concluded that Phlippeau had no manipulative restrictions; could occasionally use her left foot for foot controls, but had no restrictions with her right foot; and could occasionally climb ramps and stairs but could never climb ladders/scaffolds, balance, stoop, kneel, crouch, or crawl. (Tr. 317-18). Dr. Frush further opined that Phlippeau could never work around unprotected heights or walk on rough or uneven surfaces, but could occasionally work around moving mechanical parts, operate a motor vehicle, and work around humidity and wetness, dust, odors, fumes, extreme could and heat, and vibrations. (Tr. 319-20).

After setting forth the substance of Dr. Frush's opinion, the ALJ wrote:

---

[2] In her motion, the Commissioner argues that the ALJ "properly found that there was an inconsistency between the finding that Plaintiff's gait was stable and Dr. Ahmad limiting her to standing/walking for less than two hours in an eight-hour day." (Doc. #16 at 9). It is true that Dr. Ahmad found that Phlippeau's gait was intact on several occasions. (*E.g.,* Tr. 284, 289, 370, 376). But, this fact alone does not significantly undermine Dr. Ahmad's opinion, particularly where it is characterized as a "neurological" (as opposed to "musculoskeletal") finding, and where it is discussed by the ALJ in the midst of findings regarding her lumbar spine (as opposed to her knees). Regardless of Dr. Ahmad's notations that Phlippeau's gait was intact, then, the ALJ's finding that Dr. Ahmad's opinion "is without support from the medical evidence of record" is not supported by substantial evidence.

> I afford little weight to Dr. Frush's opinion, as it relates to the period immediately following the claimant's left knee replacement surgery. Indeed, later medical evidence shows significant improvement in the left knee, though degeneration in the right knee. Nevertheless, her ability to stand and walk improved significantly, as did her ability to sit, during an 8-hour workday.

(Tr. 17). Phlippeau now argues that, in discounting Dr. Frush's opinion, "the ALJ ignore[d] the fact that, although plaintiff's left knee did better after its total replacement, *she subsequently developed equally significant problems in her right knee*." (Doc. #15 at 14 (emphasis in original)). The Court agrees that the reasons articulated by the ALJ for rejecting Dr. Frush's opinion grossly understate Phlippeau's right knee problems and, thus, are not supported by substantial evidence.

In discounting Dr. Frush's opinion as to Phlippeau's limitations, the ALJ reasoned that medical evidence generated after his October 2014 opinion showed "significant improvement in the left knee, though degeneration in the right knee." (Tr. 17). This statement fails to accurately reflect the evidence of record in two respects.

First, Phlippeau continued to experience problems with her left knee after issuance of Dr. Frush's opinion, which is not necessarily consistent with the ALJ's characterization of "significant improvement" in this knee. (*E.g.,* Tr. 294 (limited range of motion, crepitus with palpation, and 3/5 strength in the quadriceps in February 2015), 370 (pain in both knees with range of motion in May 2015)). Second, and more importantly, with respect to Phlippeau's right knee, the medical evidence demonstrates far more significant findings than merely "degeneration." As Phlippeau points out, the subsequent findings with respect to her right knee are "strikingly similar to those in the left knee prior to its replacement." (Doc. #15 at 15). Specifically, prior to issuance of Dr. Frush's opinion, a May 2014 MRI of Phlippeau's left knee showed bone infarcts involving the distal femur and proximal tibia; a sprain of the medial

10

collateral ligament; a tear of the posterior horn of the medial meniscus; and advanced tricompartmental degenerative changes. (Tr. 296-97). As a result, Phlippeau underwent total left knee replacement surgery in August 2014. Thereafter, Phlippeau's right knee problems worsened, and a March 2016 MRI showed multiple serpiginous lesions involving the distal femur and proximal tibia, which were concerning for bony infarcts; a complex tear of the lateral meniscus; a suggestion of a tear of the posterior horn of the medial meniscus; tricompartment degenerative changes; and a small suprapatellar joint effusion with debris/synovitis. (Tr. 396-97). As these objective findings demonstrate, over the time period at issue, Phlippeau's right knee developed essentially the same problems as her left knee previously had and, as a result, she underwent a right knee total replacement just after the administrative hearing.

The Commissioner discounts this evidence, arguing that, because Dr. Frush issued his opinion after Phlippeau's left knee surgery (but before her right knee was replaced), "it would be pure speculation to conclude that he would have reached the same findings if the considered her right knee." (Doc. #16 at 12). This is beside the point. The fact remains that Dr. Frush – a specialist who treated Phlippeau for more than two years and performed her two knee replacement surgeries – opined as to the functional limitations caused by her ongoing knee problems. The ALJ discounted Dr. Frush's opinion because, after October 2014, her left knee purportedly showed "significant improvement" and her right knee purportedly showed only "degeneration." (Tr. 17). Where both of these statements are belied by the evidence of record, the Court simply cannot conclude that the ALJ provided good reasons, supported by substantial evidence, for rejecting Dr. Frush's opinion. As such, remand is required.

### III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion

for Summary Judgment (**Doc. #16**) be **DENIED**, Phlippeau's Motion for Summary Judgment (**Doc. #15**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: July 24, 2018  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 24, 2018.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager